# IN THE COURT OF APPEALS OF IOWA

No. 22-1994
Filed February 7, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ELIJAH DANIEL DAVIS,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Adair County, Scott J. Beattie, Judge.

Elijah Daniel Davis appeals his conviction for homicide by vehicle and his sentence for child endangerment. **CONVICTION AFFIRMED, SENTENCE VACATED IN PART, AND REMANDED FOR RESENTENCING.**

Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Joshua A. Duden, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Elijah Daniel Davis appeals his conviction and sentence, contending that there is insufficient evidence supporting his conviction for homicide by vehicle and the district court abused its discretion when sentencing him for child endangerment. Because substantial evidence supports the verdict, we affirm his conviction for homicide by vehicle. But because the district court abused its discretion when imposing the fine for child endangerment, we vacate this portion of the sentence and remand for resentencing on this issue.

## I.    *Background Facts and Proceedings.*

On May 8, 2020, bystanders came upon a gruesome scene: a smoking van, a mangled, custom-built hot rod, and a bloody body lying partially in the road. One couple stopped their vehicle and approached the crash, where they found a crying, bleeding six-year-old and Davis rummaging through the smoking van. Davis was "hobbling" because a bone was protruding out of his leg, and he told the couple, "I got to go." He handed off his son to them, took his backpack, and limped to another vehicle that had just stopped at the crash site. Davis demanded that the driver of the vehicle take him to his father's house, and the driver complied. During their short drive, Davis was yelling erratically on the phone and acting "agitated, angry, anxious, in a hurry." The driver also noticed the odor of "skunk" that he compared to marijuana emitting from the backpack. Eventually, the driver dropped Davis off at a house he indicated and returned to the accident.

Meanwhile, emergency services had responded to the scene in Davis's absence. The couple had attempted to clean up the child and reported their concerns to police that Davis may be impaired. The other man involved in the

collision was identified and found to be dead. An autopsy later revealed he had injuries consistent with being ejected from his vehicle during the crash.

Davis returned to the scene soon after without the backpack, where he was treated for his injuries before being taken to the hospital. Based on concerns that Davis was driving impaired, a drug recognition expert interviewed him at the hospital. His findings were that Davis was under the influence of both marijuana and methamphetamine. Samples of Davis's blood and urine were tested and showed positive for marijuana, amphetamine, and methamphetamine. Davis was charged with homicide by vehicle and child endangerment.

After trial, a jury found Davis guilty as charged. The district court sentenced Davis to consecutive prison terms, for a total of twenty-seven years, and a suspended fine of $855. Davis appeals.

## II. Sufficiency of the Evidence.

Davis first contends that insufficient evidence supports his homicide-by-vehicle conviction. We review sufficiency-of-the-evidence claims for correction of errors at law. *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). "In conducting that review, we are highly deferential to the jury's verdict," which is binding on our court if "supported by substantial evidence." *Id.* To determine if a verdict is supported by substantial evidence, "we view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Id.* (quoting *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017)).

Because Davis concedes he was driving with controlled substances in his system, the State only had to prove that his "act or acts unintentionally caused the

death of [the victim]." Namely, it was required to establish that Davis's own impairment caused the crash and subsequently the victim's death. Viewing the evidence in the State's favor, substantial evidence supports Davis's conviction. The State provided ample evidence that established Davis was impaired and caused the victim's death. The testimony of multiple expert witnesses established that the controlled substances in Davis's system were enough to cause impairment; in fact, the toxicologist testified that the amount of methamphetamine was typical of "levels we see in a driving impairment case" and even potentially "toxic." He also testified that Davis's high level of pain tolerance despite sustaining a compound fracture was consistent with impairment. Further, several eyewitnesses described Davis's strange and erratic behavior following the crash. He left his young child with near-strangers, fled the scene of a death he caused, managed to function while deeply injured, and acted angry and animated. His concern was not for his own bleeding son nor the victim lying in the road but for retrieving his "skunk"-scented backpack and taking it to a relative's house. Similarly, the State also provided ample evidence explaining that Davis's impairment caused the victim's death, including photos of the wreckage and victim, with accompanying explanations by crash analysts and medical experts. These experts described the extent of the victim's injuries and their cause. These injuries were consistent with Davis driving while impaired and causing a fatal crash.

While Davis argues that distracted driving was more likely to have caused the death than his impairment, this is not the standard we use. Instead, the crime "doesn't require that the intoxicated operation *alone* cause the harm; the State need only prove it was one of potentially many causes of the death." *State v.*

*Johnson*, 950 N.W.2d 232, 238 (Iowa 2020) (emphasis added). Moreover, while Davis provided some evidence to suggest that distracted driving may have been a factor, the jury was free to ignore this in favor of the overwhelming evidence of Davis's impairment. *See State v. Frake*, 450 N.W.2d 817, 819 (Iowa 1990) ("Even if the testimony of a witness as to a fact is not controverted by other testimony, the finder of fact may reject the testimony if found not to be credible."); *see also State v. Noll*, No. 12-0166, 2013 WL 85932, at *4 (Iowa Ct. App. Jan. 9, 2013) ("It is the jury's function to determine credibility and resolve discrepancies in the evidence."). Because there is sufficient evidence to establish guilt, the district court did not err in convicting Davis.

### III. Sentencing Discretion.

Finally, Davis argues the district court abused its discretion by imposing the $855 fine. We review sentencing decisions for correction of errors at law, but "we reverse a sentence only if there was an abuse of discretion or defect in the sentencing procedure." *State v. Gay*, No. 19-1354, 2021 WL 4889239, at *3 (Iowa Ct. App. Oct. 20, 2021). "A district court's failure to exercise sentencing discretion requires resentencing" and is considered an abuse of discretion. *Id.* at *3–4. In determining if a court exercised such discretion, we consider "whether the court knew of its discretion" under the applicable code sections. *Id.* at *4.

When sentencing Davis, the district court noted, "There is no fine or crime services surcharge on [Count 1], but there is a fine associated with the child endangerment section, and that is a fine in the amount of $855." The minimum fine for child endangerment, an aggravated misdemeanor, was increased from $625 to $855 on July 15, 2020. 2020 Iowa Acts ch. 1074 §§ 46(2), 93. We apply

the statute in effect at the time of the offense itself to prevent constitutional implications. *See State v. Lopez*, 907 N.W.2d 112, 122–23 (Iowa 2018) (finding the imposition of a surcharge effective post-offense date violated both the U.S. and Iowa Constitutions' ban on ex post facto punishments). Because the act of child endangerment occurred on May 8, 2020, the minimum fine was $625. Although the court had discretion to impose a higher fine, its explanation does not reflect an exercise of discretion in choosing the amount. Instead, it shows the court incorrectly believed the minimum fine was $855. We therefore vacate this portion of the sentence and remand for resentencing. *See State v. Ayers*, 590 N.W.2d 25, 27 (Iowa 1999) ("Failure to exercise that discretion calls for a vacation of the sentence and a remand for resentencing.").

### IV.    *Disposition.*

Because sufficient evidence supports the verdict, we affirm Davis's conviction. But because the district court abused its discretion when imposing the fine, we vacate that portion of the child-endangerment sentence and remand for resentencing.

**CONVICTION AFFIRMED, SENTENCE VACATED IN PART, AND REMANDED FOR RESENTENCING.**